# The People of the State of Illinois ex rel. Mary Hegeler Carus, Appellant, v. F. W. Matthiessen, Appellee.

## Gen. No. 6,061.

1. CORPORATIONS, § 237*—*when want of notice vitiates election of director.* A person acquires no right as a director of a corporation under an election held in the absence of the notice required by law, to stockholders of the time and place of holding the election, unless all of the stockholders are present and acted in or assented to the election being held; their mere physical presence is not sufficient.

2. CORPORATIONS, § 181*—*when stockholders' knowledge of election of directors waives want of notice.* The fact that all of the stockholders have knowledge of the time and place when the annual election of directors of a corporation is to be held is not a waiver of the notice required by the law under which the company is organized, unless all of the stockholders attended and assented to the holding of the election.

3. CORPORATIONS, § 181*—*when election of directors without notice is valid.* Where no notice of the time and place of holding the annual election of directors of a corporation was given, although required by the law under which it was organized, a director cannot be legally elected, notwithstanding all of the stockholders were present, where a portion of them protested against the election being held and then withdrew.

4. CORPORATIONS, § 181*—*when presence of stockholders is waiver of notice of election of directors.* The presence of a stockholder at an annual election of the directors of a corporation is not a waiver of the failure to give notice of the time and place of holding the election, which was required by the law under which the company was organized, where he took no part in the proceedings except to protest against the election being held.

5. CORPORATIONS, § 181*—*when presence of stockholder at election of directors estoppel to question validity.* The presence of a stockholder at the annual election of the directors of a corporation does not estop him from questioning the validity of the election for want of notice of the time and place it was to be held, where he took no part in the proceedings other than to protest against the election being held.

6. CORPORATIONS, § 72*—*when custom to elect directors without*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*notice established.* A usage and custom of the stockholders of a corporation to assemble annually at a certain time and place for the election of directors without the notice required by law, *held* not established by the evidence.

7.   ESTOPPEL, § 51*—*when stockholder estopped from questioning validity of election of director.* The fact that a stockholder did not base his objection to the holding of an annual election of the directors of a corporation, on the ground that the notice of the time and place of holding the election required by law had not been given, but merely protested against the holding of the election, does not estop him from thereafter questioning the validity of the election.

Appeal from the Circuit Court of La Salle county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the April term, 1915. Reversed. Opinion filed April 15, 1915.

GEORGE WILEY and MONTGOMERY, HART, SMITH & STEERE, for appellant; CHARLES S. CUTTING, N. H. PRITCHARD and J. D. DICKERSON, of counsel.

M. F. GALLAGHER, for appellee.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

This is the first considered of four cases involving the interests of the Hegeler and Matthiessen families in two corporations, being Gen. Nos. 6061, 6062, 6063, 6064. The cases have been argued with reference, one to the other, and our opinions are so written and may be so read for a better understanding of the situation.

On January 30, 1914, the State's Attorney of La Salle county, on relation of Mary Hegeler Carus, obtained leave to file and filed in the Circuit Court of that county an information in the nature of quo warranto against F. W. Matthiessen, the appellee, to contest his right to the office of director of the Matthiessen & Hegeler Zinc Company, an Illinois corporation, with its principal office in La Salle, Illinois. Appellee pleaded title to the office under an election of the

stockholders of the corporation at a meeting held December 18, 1913. It was stipulated that any evidence might be introduced on the trial that would have been admissible under proper pleadings; but counsel agree here that the question presented by the record is, whether the meeting of the stockholders of December 18, 1913, was a valid, legal meeting. Appellant claims that the action of the stockholders at that meeting was of no effect because notice of the meeting, required by law, was not given. Appellee claims that there was sufficient notice of the meeting, and if not, that all stockholders were present at the time and place, and therefore it is immaterial whether the required notice was given or not. The case was tried by the court without a jury, resulting in a judgment for the respondent, from which this appeal is prosecuted.

The question is to be decided from a consideration of what was said and done at the office of the company on December 18, 1913, and there is little conflict in the evidence about that. It is a question of what was fairly understood, or ought to have been understood, by the parties there present in the light of the history of the corporation and its methods of electing its officers, and other existing conditions with which all present were familiar, and which must be here mentioned for a better understanding and interpretation of what there occurred.

The corporation was organized in 1871 under a General Act of the Legislature of 1857, with a capital stock of $426,000, divided into 426 shares of the par value of $1,000 each. The act required that the corporation should be managed by a board of not less than three nor more than seven directors, who shall be stockholders therein, and who shall be annually elected by the stockholders to serve for one year, and until their successors shall have been elected. The charter provides four as the number of directors. The statute further provides:

"Section 6. An annual election of directors shall be held at such time and place as the board may designate, and a written or printed notice of such election shall be given to each stockholder personally or sent to him through the postoffice at least fifteen days before the day of election, and the election shall be made by such of the stockholders as shall attend for that purpose, either in person or by proxy. * * *. Each stockholder shall be entitled to one vote for each share of stock held by him, and those persons receiving the greatest number of votes shall be directors. If from any cause the annual election of directors be not made on the day fixed for that purpose, it may be held on any day thereafter designated by the board or by any three stockholders, of the time and place of which the like notice shall be given to the stockholders as in the case of a regular election."

Three sections of the by-laws of the company were as follows:

"Section 1. Meeting of Stockholders. The annual meeting of the stockholders of said company for the election of a board of four directors and the transaction of such other business as may be necessary for the welfare of the company, shall be held at the office of the company in the city of La Salle, La Salle county, Illinois, on the 18th day of December of each year, excepting when that day shall fall on a Sunday, and in such case on the succeeding Monday.

"Section 2. Special Meetings of Stockholders. Special meetings of the stockholders may be called by three stockholders, as provided for in Section 6 of the Additional Act for the Incorporation of Manufacturing Companies, of the Laws of 1857, under which this company is organized, or by the president, as provided for in Article V, Section 1 of these by-laws.

"Section 3. Election of Directors. The annual election of directors of said company shall be held at the office of said company in La Salle, Illinois, on the 18th day of December in each year, except in years when said day shall fall on Sunday and then on the succeeding Monday. That in case of the failure

for any reason to hold such election on either of the days above named, then such election shall be held at an adjourned meeting of the stockholders or a meeting called for such purpose, as soon thereafter as practicable.''

It will be observed that the by-laws fix the place and the day but not the hour of the stockholders' meeting for the election of directors. On the date of the meeting in question, December 18, 1913, the entire board of four directors was to be elected. The corporation was virtually an equal partnership between F. W. Matthiessen and Edward C. Hegeler from its organization to the death of Mr. Hegeler in 1910, each party controlling one-half the stock, which he kept in his own name on the books of the company, except a few shares transferred to members of his family or some one in his confidence and under his control. It had for many years been the general practice of the stockholders to meet at the office of the company at about 10 a. m. on December 18th and discuss the affairs of the corporation, and when all were present and ready to act to call the meeting to order and proceed to make a formal record of the election of directors. The eight annual meetings last prior to the one in question are shown by the records thereof to have been organized, two at 10 a. m., four at 10:30 a. m., and the others between the hours of 10 and 10:30 a. m. While the meetings had generally been held at the office of the company, they had sometimes been held at the home of Mr. Matthiessen and sometimes at the home of Mr. Hegeler, and sometimes had been entirely omitted. There had been no need of notice to the stockholders of such meetings, and none had been given. No meeting had been held against the protest of any stockholder so far as appears, and the stockholders were so few in number that it was entirely practicable to arrange the time and place of meeting to suit the convenience of all. The custom to so do is quite as

apparent from the record as is the custom to hold the meeting at about 10 a. m. of December 18th.

At the time in question, December 18, 1913, the registry of the corporation showed the Hegeler stock owned by Mary Hegeler Carus, trustee, 211 shares; Mary Hegeler Carus, 1 share; C. B. Lihme, 1 share; and the Matthiessen stock by F. W. Matthiessen, 178 shares; George P. Blow, 3 shares; Adele M. Blow, 10 shares; F. W. Matthiessen, Jr., 10 shares; Eda Matthiessen, 10 shares; Dr. Philip S. Chancellor, 2 shares, —being an exactly even number of shares in the two families, as there had always been since the formation of the corporation. Each family was then and always had been represented by an equal number of directors and managing officers. The statute under which the corporation was formed requires that a director be a stockholder, therefore there were only two persons representing the Hegeler interest qualified to act as directors, while there were six persons representing the Matthiessen interest eligible. The one share of stock held by Lihme was apparently so held for the purpose of qualifying him to act as one of the two directors to which the Hegeler interest was entitled to preserve the balance of power. He was a son-in-law of Edward C. Hegeler, deceased. It had been from the beginning the intent and purpose of the owners of the corporation that it should be and remain during the life of the corporation strictly a family affair, not only in the equal ownership of stock, but also in the management of the business. Lihme had been acting as director two or three years prior to this meeting of December 18, 1913. On the morning of the meeting, or the evening before, it is not clear which, he was served with a summons in a quo warranto proceeding, brought on the relation of F. W. Matthiessen and others representing that interest, to contest his right to hold the office of director, the charge in the petition for leave to file the information being that he was

not a stockholder in the corporation and therefore not qualified to act as director.

There had been no notice given of a stockholders' meeting to be held on December 18, 1913, but at 10 a. m., Mary Hegeler Carus, who was a director in the company, and C. B. Lihme went to the office of the corporation and found there F. W. Matthiessen, his son, F. W. Matthiessen, Jr., his son-in-law, George P. Blow, and M. F. Gallagher, a lawyer from Chicago, who appeared as attorney in the quo warranto proceeding against Lihme, and who held proxies from the other three Matthiessen stockholders. Mrs. Carus sat down and said nothing. Lihme had sent for an attorney who was delayed and had not reached them. Lihme was not a lawyer and evidently did not understand the situation further than to know that his ownership of the one share of stock was in question, and to believe if he did not own it he could not vote it, which would leave the Matthiessen interest in the majority, and if he was not a stockholder he could not act as director, which would necessarily place three of the four directors in the Matthiessen family. He knew there was to be a conflict between the two interests that had so many years dwelt in harmony, and if a meeting was held at that time and place, he and Mrs. Carus without the opportunity to consult counsel were not fitted to cope with the Matthiessen interest represented by counsel. The witnesses all agree that he was much excited and at once appealed to all present, and particularly to F. W. Matthiessen, to postpone the meeting and do nothing at that time. He used various expressions among them asking that the meeting be adjourned until after the day of the return of the summons in the quo warranto proceedings. He was promptly informed that the meeting could not adjourn without organizing, and while he was still protesting that nothing should be done, a motion was put that F. W. Matthiessen act as chairman, and another

motion that Mrs. Carus act as secretary of the meeting, both of which motions were declared carried. Neither Mrs. Carus nor Lihme voted, and they say Mrs. Carus was not declared elected secretary while they were in the room. Lihme was all the time disregarding the fact that they were organizing a meeting and so strenuously insisting that nothing be done that he was declared out of order, and left the room, stating that there would be no quorum in the absence of himself and Mrs. Carus and therefore no business could be transacted. Mrs. Carus left the room with him. The meeting proceeded to ballot for directors, and by the unanimous vote of the stockholders remaining in the room declared three of the Matthiessen family and Mrs. Carus elected directors for the ensuing year, and it is this action of that meeting upon which appellee relies to sustain his title to the office.

Mr. Lihme was mistaken in supposing that one-half of the stock of the corporation represented by the Matthiessen interest did not constitute a quorum, and his statement in that regard is only important as showing that at last, as well as at first, and at all times he was vigorously protesting that there should be no meeting of the stockholders for the transaction of any business at that time and place. Mrs. Carus said and did nothing whatever indicating her desires in the matter, except to leave the room on Lihme's statement that in that way they could prevent any action at that time.

In the absence of the notice required by statute, or something equivalent to or dispensing with that notice, the respondent obtained no right of title to the office by the action of the stockholders voting at that meeting. This court said, speaking of the question of notice and of a statute the same as or similar to the one in question here, in *Charter Gas Engine Co. v. Charter*, 47 Ill. App. 36, on page 53: "It (the meeting) could not be legally held until after notice of the time and place had

been given in an authentic and legal mode, unless all stockholders were present and consenting in person or by proxy." And further said on page 54: "A by-law like the one in question is still insufficient (as notice), because no place or hour is named," and cited with approval *San Buenaventura Commercial Min. & Mfg. Co. v. Vassault*, 50 Cal. 534, holding that it is not sufficient as notice that a by-law names a day upon which an annual meeting is to be held. We see no reason to doubt the law as stated by this court in that case. It is said in 10 Cyc. 326:

"Where such a notice is required, by the terms of the governing statute * * * unless it is explicitly given in respect of day, hour, and place, the meeting cannot be legally held, unless the shareholders are all present and consenting, whether in person or by proxy; and the fact that the by-laws fix the day upon which such a meeting shall be held is not a sufficient notice of the time and place * * *. If a single member, having the right to be present and vote, is not notified in the prescribed manner, and is absent or refuses to consent to the proceedings held at the meeting, its proceedings will be illegal and void, unless the charter or governing statute otherwise provides."

The following authorities also support the above propositions of law: Purdy's Beach on Corporations, sec. 665, page 978; Cook on Corporations, (6th Ed.) sec. 594, page 1618; 26 Am. and Eng. Encyc. of Law, page 992; *Thompson v. Williams*, 76 Cal. 153; *State v. Pettineli*, 10 Nev. 141.

While it is true that an election had at a meeting irregularly assembled may be valid if all stockholders attend and act or assent (10 Cyc. 323), we are of the opinion that the mere physical presence of all stockholders at the time and place is not sufficient to validate the meeting.

The notice seems to be a substantial requirement of law, not to be waived by the fact that all stockholders knew in some other way than the one prescribed of

the time and place of the meeting. The place is no more important than the time. If all the stockholders are present and consent, they may hold a meeting at some other place than that required by the governing by-law, as was done by this corporation in holding meetings at the homes of Mr. Hegeler and Mr. Matthiessen, before mentioned; but it could hardly be argued that the other stockholders could have assembled at either of these homes and held a meeting there against the protest of either of these men, and that the meeting would be valid merely because he was physically present.

The question is whether there was such a presence and assent of the stockholders representing the half interest that we have called the Hegeler interest, as to bring the case within the rule that proceedings at a meeting irregularly assembled are valid if all stockholders attend and act or consent. Mrs. Carus did nothing and said nothing; she represented one-half the stock in the corporation excepting the one share that stood on the books in the name of Mr. Lihme, but was not owned or legally held by him if the Matthiessen claim in the suit then pending should be sustained by the courts. We do not see any ground for holding that she assented to or acted at the meeting. If she be said to acquiesce by her silence and by leaving the room, to what Mr. Lihme said, that was all to the end that no meeting should be held at that time and place. It matters little what language he used,—that is, his language in the state of excitement he was in would not naturally be understood in any technical sense by the parties there present,—they knew that so far from consenting to a meeting, he was frantically, and they say violently, objecting to one at that time and place. He had not consulted counsel and did not know whether he was a stockholder or not. He no doubt knew the facts concerning his holding the one share of stock, and knew that the Matthiessen

interest represented by the lawyer there present claimed that under those facts he was not a stockholder. He had the best of reasons for not assenting to a meeting and the election of directors until the question could be determined, or at least until he could be advised in the matter, and he left no doubt as to his attitude on the question. If he owned the one share of stock he should not be held to be present at the meeting either acting or assenting; if he did not own it we do not see how his presence and whatever he said or did could be construed as the presence and assent of the person, whoever it might be, that did own it.

There are cases in which language, read detached from the statement of facts under consideration, might support the contention that the mere physical presence of all stockholders at the time and place in question would validate a meeting irregularly assembled and otherwise void for want of notice; but they are cases in which there was an attendance of all stockholders at a meeting, not merely at a place where a meeting was held. The rule announced by the textwriters and courts is usually, in substance, as stated in *J. W. Butler Paper Co. v. Cleveland*, 220 Ill. 128, where the court says on page 133: "It has been uniformly held that it is immaterial whether or not such notice has been given in the manner pointed out by the statute, if the persons entitled to such notice actually attend the meeting and participate in the business there transacted." No case is cited and we know of none where the presence of a stockholder at the place of a meeting, taking no part in the meeting, protesting that no business should be transacted, is held to be a waiver by him of notice required by law, or to estop him from questioning the validity of acts there performed.

Mrs. Carus before learning of the attack on the right of Mr. Lihme to serve as director probably ex-

pected there would be a meeting of the stockholders at the office of the company on that day soon after 10 a. m., and probably intended to agree to and act in that meeting; but there was nothing in the history of the corporation that would even suggest to her that she should or could force a meeting and election of directors at that time and place if for some reason, like the sudden sickness or death of one of the Matthiessen stockholders, or for any other reason, people representing that stock were unable or unwilling to attend and vote it at the meeting. Appellee argues that the usage and custom of the stockholders to assemble at that time without notice should be held binding on them, dispensing with notice. Sometimes usages and customs become binding. What has been done for so long a time that it has become a custom may indicate what should and must be done. As we have before seen, there was no long-established, uniform, uninterrupted custom to hold the stockholders' meeting at this time and place, but there was a long-established uninterrupted custom not to hold the stockholders' meeting without the presence and assent of all stockholders.

It is argued that Mr. Lihme and Mrs. Carus did not object that there was no notice, and therefore that the relator, Mrs. Carus, is estopped to raise that question. We do not see the force of that suggestion. The meeting required the assent of every stockholder. Any stockholder had the right to stay away for a good or bad reason, or no reason at all, and thus prevent a valid meeting. We are of the opinion that the conduct of Mrs. Carus was equivalent to staying away from the meeting. She was a director in the corporation and could if she chose stay in its office through an entire meeting without attending that meeting. Neither she nor Mr. Lihme recognized a meeting by making any motion or voting on any motion. Mr. Lihme's request that the meeting adjourn was not addressed to

the chairman of the meeting, as chairman, but was an appeal to Mr. Matthiessen, who controlled one-half the stock in the corporation. The facts do not bring the case within the rule that a shareholder cannot attend and act in part of the proceedings of a stockholders' meeting and afterwards object, or even at the meeting object, that other business should not be transacted because the meeting is irregularly assembled. Counsel say if the stockholders present had acceded to Mr. Lihme's request and all voted to adjourn the meeting, there can be no doubt that their action would have been legal; this is probably true, if Lihme owned the share of stock that stood in his name, and had the right to vote it, because all stockholders would have been present and acting at the meeting; but no motion to adjourn was made in or acted on, by the meeting, and even had Mr. Lihme made such a motion we do not see how that could estop the relator, Mrs. Carus, representing one-half the stock, less one share, from showing that she did not consent to, act in, or even attend a meeting held at that time and place.

For the reasons above stated we are of the opinion that the judgment should be reversed, and as there is no claim of right or authority of appellee to hold the office of director, other than the action of the meeting in question, final judgment of ouster is directed to be entered by the clerk of this court.

*Reversed.*